## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BERTINO & ASSOCIATES, INC., | ) | CIVIL ACTION NO. 1:12-cv-06603 |
| Plaintiff, | ) | |
| v. | ) | |
| R L YOUNG, INC., D/B/A YOUNG & ASSOCIATES | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT R L YOUNG, INC., D/B/A YOUNG & ASSOCIATES' MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(B)(6) TO DISMISS THE CLAIMS IN THE SECOND AMENDED COMPLAINT OF PLAINTIFF BERTINO & ASSOCIATES, INC.**

**ORAL ARGUMENT ON THIS MOTION IS REQUESTED**

Respectfully submitted,

COZEN O'CONNOR
A Pennsylvania Professional Corporation

BY: /s/ John P. Johnson, Jr.
John P. Johnson, Jr., Esquire (JJ3052)
Liberty View
457 Haddonfield Road, Suite 300
Cherry Hill, NJ 08002
Telephone: 856-910-5000
Toll Free Phone: 800-989-0499
Facsimile: 856-910-5075
jjohnson@cozen.com
Attorneys for Defendant L Young, Inc., d/b/a YOUNG & Associates

Dated: March 25, 2013

**TABLE OF CONTENTS**

PAGES(S)

I. INTRODUCTION .................................................................................................... 1

II. SCOPE OF SERVICES ............................................................................................ 1

    A. Scope of Bertino's Work per the Written Agreement ................................. 1

    B. Alleged Scope of Bertino's Work per the Oral Agreement ......................... 2

    C. Alleged Scope of Bertino's Work per the Quasi Contract .......................... 3

III. TIME PERIOD FOR SERVICES AND COMPENSATION ................................... 3

    A. Time Period per the Written Agreement ..................................................... 3

    B. Alleged time period per the Oral Agreement, Implied Terms and Quasi-Contract ....................................................................................................... 3

IV. APPLICABLE LAW ................................................................................................ 4

    A. The Written Agreement was a final, fully integrated expression of the parties' intentions as to the scope and time period of Bertino's services .... 4

    B. The Oral Agreement is barred by the Statute of Frauds .............................. 5

    C. The "implied terms" suggested by Bertino do not override the express terms of the Written Agreement ............................................................................ 6

    D. Bertino's claims are based on alternative, inconsistent theories of fact, but these are in fact the same claims ................................................................. 8

V. CONCLUSION ......................................................................................................... 9

## TABLE OF CONTENTS

**CASES**                                                                                                   **PAGE(S)**

Asch Webhosting, Inc. v. Adelphia Business Solutions Inv., LLC,
    2007 WL 2122044 *2 (D.N.J. 2007) ............................................................. 2

Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.,
    2 Cal.4th 342, 350 (Cal. 1992) ............................................................. 6, 7

Molecular Analytical Systems v. Ciphergen Biosystems, Inc.,
    186 Cal.App.4th 696, 712 (Cal. App.2010) ............................................................. 6

Seaman's Direct Buying Serv., Inc. v. Standard Oil Co. of Cal.,
    686 P.2d 1158, 1162 (Ca. 1984) ............................................................. 7, 8

Smith v. City and County of San Francisco,
    225 Cal.App.3d 38, 49 (Cal. App. 1st 1990) ............................................................. 6

Stacy v. Brinker Restaurant Corp.,
    2012 WL 5186975 *8 (E.D. Cal. 2012) ............................................................. 2

Storek & Storek, Inc. v. Citicorp Real Estate, Inc.,
    122 Cal.Rptr.2d 267, 277 (Cal.App.4th 2002) ............................................................. 6

Traumann v. Southland Corp.,
    842 F.Supp. 386, 390 (N.D. Cal. 1993) ............................................................. 7, 8

**STATUTES**

CAL.CIV.CODE § 1625 ............................................................. 4

CAL.CIV.CODE § 1856(a). ............................................................. 4

**I.      INTRODUCTION**

Plaintiff Bertino & Associates, Inc.'s ("**Bertino**" or "**Plaintiff**") Memorandum of Law in Opposition to Defendant R L Young, Inc.'s, d/b/a YOUNG & Associates ("**YA**" or "**Defendant**") Motion to Dismiss Plaintiff's Second Amended Complaint (the "**Response**") is a convoluted mash-up of conflicting laws and facts wherein Bertino wastes 38 pages explaining what he meant to plead in the Second Amended Complaint.  Bertino apparently wants this Court to believe that there were two separate and distinct contracts – one written contract and one oral contract – setting forth the terms and conditions of Bertino and Defendant's business relationship. (*See* the Second Amended Complaint (the "**Complaint**")).  Additionally, Bertino alleges that some of the terms of the oral contract also do double duty as implied terms in the fully integrated, written contract. Despite its best and prolonged efforts, Bertino cannot remedy the flaws of the Second Amended Complaint and Defendant's Motion to Dismiss must be granted.

**II.     SCOPE OF SERVICES**

     **A.      Scope of Bertino's Work per the Written Agreement**

YA and Bertino both admit there was a written, Independent Consultant Agreement entered into on or about July 6, 2010 (the "**Written Agreement**") (Complaint, Exhibit A). YA asserts the scope of the Written Agreement is limited to consulting activities for YA's insurance-related business, as described in the Written Agreement. (*See* Motion to Dismiss, pp. 5-6).  The "Services" to be provided by Bertino and the "business" contemplated by of the Written Agreement both are defined work on behalf of insurance companies. (Agreement, page 8) Bertino, however, claims the scope of the Written Agreement includes "**all work by any**

1

**Consultant** identified and managed by Bertino." (Response, p. 13; Complaint, ¶ 46) (emphasis added). If the Court accepts Bertino's logic, the clauses of the Written Agreement describing the scope of "Services" would be rendered superfluous or meaningless. The Court must reject this logic. Stacy v. Brinker Restaurant Corp., 2012 WL 5186975 *8 (E.D. Cal. 2012) ("The contract must be read to avoid rendering any clause nugatory, inoperative or meaningless"); Asch Webhosting, Inc. v. Adelphia Business Solutions Inv., LLC, 2007 WL 2122044 *2 (D.N.J. 2007) ("Contract provisions are to be interpreted so as to give each provision meaning, rather than rendering some provisions superfluous").

  B. **Alleged Scope of Bertino's Work per the Oral Agreement**

Bertino also alleges he had a separate "Oral Agreement" with YA from June 2010 until the present (October 2012) that provided Bertino "compensation of a percentage of **each project** utilizing Consultants within the Northeast Region." (Complaint, ¶¶ 15 and 32) (emphasis added). In other words, Bertino alleges there was both the Oral Agreement and the Written Agreement covering the same scope of work ("all work" and "each project") over the same scope of time. No separate Oral Agreement exists. The Written Agreement is the sole agreement, contract and understanding between the parties. (*See* Motion to Dismiss, pp. 5-6; Complaint, ¶¶ 15, 46 and 32).

  C. **Alleged Scope of Bertino's Work per the Quasi Contract**

If the all-encompassing Oral Agreement and Written Agreement were not enough, Bertino additionally asserts it is entitled to recovery based on an equitable, quasi-contract between the parties "aris[ing] from the services it performed by locating, recruiting, and introducing numerous Consultants to YA." (Response, p. 23). Apparently, "[t]hese recruitment

2

efforts were outside the terms of the [Written] agreement" and "not a listed item in Addendum 1 of the [Written] Agreement," despite claims the Written Agreement covered "all work by any Consultant." (Response, p, 23-24, 26; Complaint, ¶ 46). Likewise, Bertino claims that "[n]either the non-estimating related services nor the compensation were addressed or discussed in a written agreement between the parties." (Response, p. 24). Again, it is not clear how this does not fall within the "all work by any Consultant" and "compensation of a percentage of each project" allegations that Bertino alleges are provided for in the Written Agreement. (Complaint, ¶¶ 15, 46 and 32).

### III. TIME PERIOD FOR SERVICES AND COMPENSATION

#### A. Time period per the Written Agreement

The parties agreed that the Written Agreement expressly provided for a renewable one (1) year term that could be terminated upon ten (10) days written notice by either party. (Complaint, ¶¶ 22, 23). Such terms are clear, concise and unambiguous. On or about March 23, 2012, YA terminated the Written Agreement, pursuant to its terms. (Complaint, ¶ 40).

#### B. Alleged time period per the Oral Agreement, Implied Terms and Quasi-Contract

As with the majority of the Complaint, it is difficult to ascertain what Bertino claims were implied, orally agreed to or equitably required as to the time period for which it was alleged to be paid.

In its Response, Bertino admits that "[t]he recurring compensation that was due to Bertino over five years for these services is not in Section 3 or Addendum 2 of the Agreement," i.e. it was not in the Written Agreement. (Response, p. 24). However, Bertino previously

3

claimed this to be an "implied term" of the Written Agreement. (Complaint, ¶ 55). Bertino likewise claims that YA made oral promises that Bertino would collect Override payments for a 5-year period prior to execution of the fully integrated Written Agreement. (Complaint, ¶¶ 19, 25, 29). The 5-year period also is a term of the alleged Oral Agreement. (Complaint, ¶ 94).

IV. APPLICABLE LAW

    A. **The Written Agreement was a final, fully integrated expression of the parties' intentions as to the scope and time period of Bertino's services.**

As discussed in the Motion to Dismiss, the Written Agreement contains a merger and integration clause confirming that this Written Agreement "sets forth the entire agreement between and parties concerning the **Services** . . . No modification or waiver of this Agreement shall be effected unless in writing and duly executed and delivered by each party to the other." (Agreement, p. 5) (emphasis added).  Without citation to any case law, Bertino suggests this Court can review parole evidence to determine how the "oral conversations and promises that were implied in the Agreement" are to be interpreted. (Response, p. 14).

To the contrary, "[t]erms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." CAL.CIV.CODE § 1856(a).  Likewise, the "execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."  CAL.CIV.CODE § 1625. The other possible exceptions listed in the California statute (CAL.CIV.CODE § 1856) cited by Bertino are not applicable in this case.

4

The language of the Written Agreement is clear. The parties intended the Written Agreement to set forth the final, fully integrated agreed-upon terms. As such, the scope of Services to be performed by Bertino compensated by YA and one (1) year time period is limited to the text of the Written Agreement. The alleged oral promises supposedly occurred prior to the execution of the Written Agreement also are inapplicable because of the merger and integration clause. (Complaint, ¶¶ 19, 25, 29).

Bertino also suggests he had an "Oral Agreement" encompassing all the communications with YA from the New Jersey Meeting (prior to execution of the Written Agreement) to the present. (Complaint, ¶ 32). If we accept Bertino's pleading as true, then all communications and promises that supposedly occurred and were not memorialized in the Written Agreement are likewise barred by the merger and integration clauses.

### B.    The Oral Agreement is barred by the Statute of Frauds.

Anything related to a five (5) year time period (which Bertino admits was not in writing) is barred by the Statute of Frauds, which prohibits enforcement of an oral agreement that by its terms cannot be performed within a year from the making unless it is both in writing and signed by the party to be charged. CAL.CIV.CODE § 1624(a)(1).

Bertino cites to a case involving UCC sale of goods, requirements contract for the proposition that the statute of frauds does not prevent the court from finding "clearly implied" terms in a written contract. (Response, p. 16). Seaman's Direct Buying Serv., Inc. v. Standard Oil Co. of Cal., 686 P.2d 1158, 1162 (Ca. 1984), however, is inapposite to the facts of this case. The court found the "obvious implication" of a dealership contract between an oil wholesaler and gas station was that the wholesaler "would supply as much fuel as dealer required," meaning that

5

the failure to specifically state the quantity of gasoline needed did not violate the statute of frauds. Id. at 1163. There is nothing "obvious" or "clearly implied" about the five-year term suggested by Bertino to prevent application of the statute of frauds.

Likewise, to the extent any "implied terms" suggested by Bertino also are found in the Oral Agreement, these too are barred by the statute of frauds. See Smith v. City and County of San Francisco, 225 Cal.App.3d 38, 49 (Cal. App. 1st 1990) ("prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract"); Molecular Analytical Systems v. Ciphergen Biosystems, Inc., 186 Cal.App.4th 696, 712 (Cal. App. 2010) (the "covenant does not exist independently of the underlying contract".) Here, Bertino claims the Oral Agreement was all encompassing therefore all the implied terms (i.e. any terms not included in the express Written Agreement) are barred by the statute of frauds.

### C. The "implied terms" suggested by Bertino do not override the express terms of the Written Agreement.

The implied covenant of good faith and fair dealing cannot contradict the express terms of a contract." Storek & Storek, Inc. v. Citicorp Real Estate, Inc., 122 Cal.Rptr.2d 267, 277 (Cal.App.4th 2002). In Carma Developers (Cal.), Inc. v. Marathon Development California, Inc., 2 Cal.4th 342, 350 (Cal. 1992), a commercial lease expressly provided the lessor with the right to terminate the lease upon receiving notice of the tenant's intent to sublet. The lessee decided to relocate its headquarters, and submitted a notice of intent to sublet approximately 80 percent of the premises. Id. The lessor responded with a notice of termination and pursued a new lease agreement with the intended subtenant. Id. The original lessee sued the lessor for, among other

6

things, breach of the implied covenant of good faith and fair dealing. Id. The California Supreme Court held that because the lessor's termination of the lease was expressly permitted by the lease, such conduct could not violate an implied covenant of good faith and fair dealing as a matter of law. Id. at 376. In addressing the relationship between "implied terms" and express terms of a written contract, the Supreme Court of California stated no covenant of good faith and fair dealing can be implied which forbids such acts and conduct authorized by the express provisions of the contract. Id. at 374. Since the lessor was given the right to do what they did by the express provisions of the contract, there can be no breach. Id.

Bertino relies on cases focusing on an insurer's right to cancel its contract with the insured in support of his claim that the implied duty of good faith and fair dealing prevents termination of a contract. (*See* Response, pg. 18-21). The one non-insurance case discussed by Bertino did not permit the implied covenant of good faith and fair dealing to override the express clauses. Rather, the court found that the plaintiffs put forth enough facts to avoid summary judgment on their claim that defendant breached the implied covenant of good faith and fair dealing. Moreover, the case is factually distinct. Traumann v. Southland Corp., 842 F. Supp. 386, 389 (N.D. Cal. 1993) discusses the plight of individuals attempting to own a 7-Eleven franchise. Their contract was terminated during the application process because their antisocial personality traits made them unsuitable to be franchisees. Id. In denying the motion for summary judgment, the court explained:

> The Traumanns had been in constant contact with various representatives of Southland for at least five months when their application was terminated, had completed all but four days of the required application process, had taken personality tests, had tendered their franchise fee, and had been told by Southland to begin hiring employees. The Traumanns

7

> reasonably expected to get the franchise at the end of the week in which their application was terminated. It is hard to understand why, if the Traumanns have such antisocial personalities, this fact was not discovered by one of Southland's employees prior to March 24, 1992. In addition, the Traumanns were given no warning that their performance was not acceptable, and were not even informed of the reason for their termination until one week after they were dismissed. Based on these facts, the Traumanns should have an opportunity to try to prove that Southland breached the implied covenant of good faith and fair dealing.

Id. at 391.

Unlike *Traumann*, this was not a long-drawn out application process between a large corporation and a married couple wherein the married couple did not receive any benefit from the contract, but a business agreement between two sophisticated parties. Bertino received benefits during the term of the Written Agreement. The implied duty of good faith cannot require YA to forego its express right to terminate the Written Agreement.

### D.  Bertino's claims are based on alternative, inconsistent theories of fact, but these are in fact the same claims.

YA does not dispute that a party may plead alternative or inconsistent theories *of law*. What Bertino has presented, however, are alternative or inconsistent theories *of fact*. The same contractual term cannot be discussed prior to the execution of the fully integrated Written Agreement, an implied term in the Written Agreement, an agreed-upon term in the Oral Agreement and the basis for quasi-contract relief. It is *factually* inconsistent.

Bertino also asserts that the scope of the Oral Agreement and the Written Agreement are not identical and therefore it can bring both claims. (Response, ¶ 25). However, both agreements are alleged to have included the same terms. For example, the World Resorts project is claimed to be included in the scope of (1) the Written Agreement *(scope includes "all work by any Consultant");* (2) the Oral Agreement *(scope includes "each project utilizing Consultants within*

8

*the Northeast Region"*); (3) an implied term in the Written Agreement (*Counts II and III)*; and (4) the quasi-contract (*Count IV).* (Response, p. 13; Complaint, ¶¶ 32, 46, 50, 55, 65).

The identical nature of the claims is also apparent when you analyze the damages sought by Bertino. In two quasi-contract counts (Counts V and VII), Bertino asks the Court for payments from April 1, 2012 to the present. (Complaint, ¶ 71, 86). If there was an Oral Agreement that permitted recovery of damages for recruitment of the Consultants or if the scope of work included in the quasi-contract claims was separate and distinct from the Written Agreement, shouldn't Bertino be seeking damages from July 2010 to the present rather than asking for damages since the Written Agreement was terminated?

## V. CONCLUSION

The claims in Plaintiff's Complaint, as "clarified" in its Response to the Motion to Dismiss, are contradictory, fails to state claim upon which relief may be granted and barred by the applicable law. YA respectfully requests this Court grant its Motion to Dismiss and dismiss Plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted,

COZEN O'CONNOR
A Pennsylvania Professional Corporation


BY: /s/ John P. Johnson, Jr.
John P. Johnson, Jr., Esquire (JJ3052)
Liberty View
457 Haddonfield Road, Suite 300
Cherry Hill, NJ 08002
Telephone: 856-910-5000
Toll Free Phone: 800-989-0499
Facsimile: 856-910-5075
jjohnson@cozen.com
Attorneys for Defendant L Young, Inc., d/b/a YOUNG & Associates

Dated: March 25, 2013