UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BERTINO & ASSOCIATES, INC.,     :     Civil No. 12-6603 (JEI/AMD)
                                :
        Plaintiff,              :
                                :          **OPINION**
        v.                      :
                                :
R L YOUNG, INC., D/B/A          :
YOUNG & ASSOCIATES,             :
                                :
        Defendant.              :


**APPEARANCES:**

LEECH TISHMAN FUSCALDO & LAMPL, LLC
By:  David S. Finkler, Esq.
4225 Naperville Road, Suite 230
Lisle, Illinois 60532
        Counsel for Plaintiff

COZEN O'CONNOR
By:  John P. Johnson, Jr., Esq.
Liberty View
457 Haddonfield Road, Suite 300
Cherry Hill, New Jersey 08002
        Counsel for Defendant


**IRENAS,** Senior United States District Judge:

     Plaintiff Bertino & Associates, Inc. ("Bertino"), brings

this diversity breach of contract suit against Defendant R L

Young, Inc., d/b/a Young & Associates ("Young").[1]  Young moves to

---

[1]  The Court exercises diversity of citizenship subject matter
jurisdiction pursuant to 28 U.S.C. § 1332.  The parties are
completely diverse and the amount in controversy exceeds the
statutory minimum.

dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons stated below, the Motion will be denied.

**I.**

The Second Amended Complaint ("S.A.C.") alleges the following facts.

Plaintiff Bertino and Defendant Young are both engaged in the business of providing construction estimating and cost evaluation services.  At oral argument on the instant Motion, counsel for both parties further explained that, during the relevant time period, Bertino provided estimating and cost evaluation almost exclusively related to new commercial construction projects, whereas Young provided estimating and cost evaluation services almost exclusively related to commercial property casualty losses.

In 2010, Young turned to Bertino for help in expanding Young's business "into the Northeast, from Massachusetts to Virginia, including Maryland, Pennsylvania, New York, and westward to Ohio (collectively, the 'Northeast Region')," where Bertino already had numerous contacts.  (S.A.C. ¶¶ 8, 14)

On July 6, 2010, the parties entered into an "Independent Consultant Agreement" whereby Bertino agreed to "provide [to Young] certain consulting Services," namely, "consulting

activities related to insurance companies and third-party adjusters and businesses acting on behalf of insurance companies, including, but not limited to, property restoration, property defects, casualty and liability losses and litigation (testimony concerning the Services)." (S.A.C. Ex. A)

The Agreement was the result of extensive negotiations and meetings between the parties. (S.A.C. ¶ 10) The parties met in person three times: once in Philadelphia, Pennsylvania; once in Providence, Rhode Island; and once at Bertino's offices in West Atlantic City, New Jersey. (S.A.C. ¶¶ 11, 13, 15)

During the Philadelphia meeting, Michael Bertino and Ray Young "discuss[ed] Bertino's background, experience, and connections as well as the ways in which Bertino could assist Young's expansion into the Northeast Region." (S.A.C. ¶ 11)

In a subsequent conversation, Michael Bertino and Ray Young first discussed "Michael Bertino becoming Young's managing partner in the Northeast Region." (S.A.C. ¶ 12)

During the Providence meeting, Michael Bertino introduced Ray Young to "a Bertino employee" and "explained that [Bertino] had contacted [other] current or former Bertino employees" to help Young perform estimating and evaluation services in the Northeast Region. (S.A.C. ¶¶ 13-14)

The West Atlantic City meeting took place in June, 2010. (S.A.C. ¶ 15) During this meeting, allegedly many of the

specific details of the parties' business relationship were
agreed upon. First, "Young and Bertino agreed that Michael
Bertino would become the managing partner of Young's Northeast
Region." (S.A.C. ¶ 17) Additionally, the parties allegedly
agreed that:

- "Michael Bertino's term as managing partner would be
  five (5) years";

- "Bertino's primary responsibilities would be to
  recruit expert estimators and property loss evaluators
  . . . [,] refer these individuals to Young [and]
  manage those [sic] individuals";

- Bertino would "assist, when requested, with marketing
  on behalf of Young in the Northeast Region"; and

- Bertino would be compensated in the form of
  "Overrides" which would be calculated "based upon the
  receipt of a 20% management fee, which would be
  applied to the difference between the amount of money
  Young billed a client and paid a Consultant managed by
  Bertino."

(S.A.C. ¶¶ 17-18)

"Ray Young [also] informed Michael Bertino that Bertino's .
. . receipt of Override payments would function as an annuity
for Bertino as [sic] Bertino could, within one to two years,
establish Young's presence in the Northeast Regions by
recruiting Consultants and then collect the Override payments
for the remainder of the five year term as managing partner."
(S.A.C. ¶ 19) "Relying on Ray Young's promise of five-year

annuity-like payments, Michael Bertino did not insist on a lump-sum referral fee." (S.A.C. ¶ 20)

Shortly after the West Atlantic City meeting, Young sent Bertino the "Independent Consultant Agreement." (S.A.C. ¶ 21) The Agreement which Young sent did not accurately reflect the terms Bertino and Young allegedly agreed upon. The Agreement: (1) "expressly provided that its term was one year, but that the Agreement would renew annually" unless either party terminated the Agreement; and (2) "permitted either [party] to terminate the Agreement, with or without cause, upon . . . ten days written notice." (S.A.C. ¶¶ 22-24; S.A.C. Ex. A)

Concerned that the written Agreement did not reflect what Bertino and Young had agreed to, Bertino inquired with Young. Young's Chief Financial Officer, Mike Kurz "informed Michael Bertino not to 'worry about it,'" and stated that the two provisions "were only formalities designed [] to allow [either party] to cancel the Agreement [in the event of an] economic problem, and to provide Young favorable tax treatment." (S.A.C. ¶ 25) "Michael Bertino was told that as long as Young's expansion into the Northeast Region was successful, the Agreement's term would be five years as previously agreed." (Id.)

Based on Kurz's assurances, on July 6, 2010, Bertino executed the Agreement with the one-year term and cancellation provisions included. (S.A.C. ¶ 26, Ex. A)

"Bertino executed the Agreement in West Atlantic City, New Jersey" (id.), although the Agreement states that "[t]he rights and duties of the parties under this Agreement shall be governed by the laws of the State of California where this Agreement is deemed to have been entered into." (S.A.C. Ex. A) The Agreement also includes an integration (or merger) clause: "[t]his Agreement sets forth the entire agreement between the parties concerning the Services and shall supersede all previous contracts concerning the subject matter hereof. No modification or waiver of this Agreement shall be effected unless in writing and duly executed and delivered by each party to the other." (Id.)

After Bertino signed the Agreement, "Bertino spent a significant amount of time and expense recruiting [] Consultants on behalf of Young . . . [to] the exclusion of pursuing other work or paying projects." (S.A.C. ¶ 34) "Young accepted Bertino's services . . . and continues to use the Consultants to this day." (S.A.C. ¶ 35)

In particular, in April, 2011, (i.e., within the first one-year term of the Agreement) Bertino's consultants performed estimating and cost evaluation work on Young's behalf for World

Resorts, a casino in Long Island.  (S.A.C. ¶ 37)  "Young refused to pay Bertino the Override of the billings for the Consultants providing services on the World Resorts Project."  (S.A.C. ¶ 38)

On July 6, 2011, the Agreement automatically renewed for another one-year term.  (S.A.C. ¶ 39)

"By letter dated March 23, 2012, Young informed Bertino that it intended to terminate the Agreement effective April 1, 2012."  (S.A.C. ¶ 41)  "To this day, Young continues its successful operations in the Northeast Region by using Consultants identified by and traceable to Bertino without making any Override or other payments to Bertino."  (S.A.C. ¶ 42)

The Second Amended Complaint asserts eight claims: breach of contract, unjust enrichment, and quantum meruit based on Young's alleged failure to pay Bertino Overrides for the World Resorts project (Counts I, IV, and VI); breach of the duty of good faith and fair dealing based on Young's termination of the Agreement before July 6, 2015 (i.e., termination of the Agreement before five years had passed) (Count II);  breach of the duty of good faith and fair dealing, unjust enrichment, and quantum meruit based on Young's failure to pay Bertino Overrides for a term of five years (Counts III, V, and VII); and a claim for a declaration that "Young has a duty to pay Bertino through the entire Override Payment Term [of five years]," (Count VIII).

As stated *supra*, Young moves to dismiss the Second Amended
Complaint asserting that Bertino has failed to state a valid
claim for relief.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a
court may dismiss a complaint "for failure to state a claim upon
which relief can be granted."  In order to survive a motion to
dismiss, a complaint must allege facts that raise a right to
relief above the speculative level.  *Bell Atlantic Corp. v.
Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P.
8(a)(2).  While a court must accept as true all factual
allegations in the plaintiff's complaint, and view them in the
light most favorable to the plaintiff, *Phillips v. County of
Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not
required to accept sweeping legal conclusions cast in the form
of factual allegations, unwarranted inferences, or unsupported
conclusions.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902,
906 (3d Cir. 1997).  The complaint must state sufficient facts
to show that the legal allegations are not simply possible, but
plausible.  *Phillips*, 515 F.3d at 234.  "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.

Before turning to Young's arguments for dismissal of specific counts of the Second Amended Complaint, the Court must address a choice-of-law issue.

## A.

This is a diversity suit; therefore New Jersey's choice of law rules apply. *See Klaxon Co. v. Stentor*, 313 U.S. 487 (1941). The parties agree that Bertino's claims based on the Agreement (Counts I, II, III, and VIII) are governed by California law, as the Agreement's choice-of-law clause provides.[2] However, Bertino argues that the quasi-contractual claims (Counts IV through VII) are governed by New Jersey law.

"[T]he first step [in the choice-of-law analysis] is to determine whether an actual conflict exists. . . . If not, there is no choice-of-law issue to be resolved." *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 143 (2008). This inquiry is done on

---

[2]  *See generally N. Bergen Rex Transp. v. Trailer Leasing Co.,* 158 N.J. 561, 568 (1999) ("Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy.") (internal citation and quotation omitted).

an issue-by-issue basis. *Erny v. Estate of Merola*, 171 N.J. 86, 94-95 (2002).

As will be demonstrated *infra*, with respect to the specific issues raised by the instant Motion, there is no actual conflict between New Jersey and California law and therefore the Court need not choose between New Jersey and California law. However, there is one potential exception requiring further discussion.

Young argues that California law "does not recognize a cause of action for unjust enrichment," (Moving Brief, p. 11), whereas the parties apparently do not dispute that unjust enrichment is a viable cause of action under New Jersey law. *See, e.g., County of Essex v. First Union Nat. Bank,* 186 N.J. 46, 61 (2006).

However, the Court does not agree with Young's reasoning that if California law applies to the quasi-contract claims, then the unjust enrichment claims (Counts IV and V) must be dismissed. While some courts have stated that "California law does not recognize a cause of action for unjust enrichment," *In re ConAgra Foods Inc.*, 908 F.Supp.2d 1090, 1114 (C.D. Cal. 2012) (citing cases), many of those courts have explained that unjust enrichment is an equitable remedy whether or not it is its own cause of action. *See id.* (discussing cases)

This Court agrees with Judge Wolfson's observation about this very issue:

> Whether there is a substantive difference between
> these [California] opinions or whether the issue is
> more one of semantics is not clear and perhaps
> beside the point. It appears California recognizes
> that a party may recover under a theory of unjust
> enrichment, be it as an independent cause of action
> or as a type of remedy.

*Montich v. Miele USA*, *Inc.*, 849 F. Supp. 2d 439, 460 (D.N.J. 2012); *see also Ohno v. Yasuma,* 2013 U.S. App. LEXIS 13496, *64-65 n.25 (9th Cir. July 2, 2013) ("The Supreme Court of California and California Courts of Appeal have recognized actions for relief under the equitable doctrine of unjust enrichment.") (citing *Ghirardo v. Antonioli*, 14 Cal. 4th 39 (1996) and *Hernandez v. Lopez*, 180 Cal. App. 4th 932 (2009)).

Thus, the Court concludes that even applying California law, the unjust enrichment claims are viable, particularly in this case where Bertino also asserts claims for *quantum meruit* (Counts VI and VII).[3] Whether considered an independent claim,

---

[3] *Cf. Myers-Armstrong v. Actavis Totowa, LLC*, 382 F. App'x 545, 548 (9th Cir. 2010) ("In California, there is no cause of action for unjust enrichment. Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust.") (internal citation and quotation omitted); *Berenblat v. Apple, Inc.*, 2009 WL 2591366 at *6 (N.D. Cal. 2009) ("[A] claim for unjust enrichment cannot stand alone without a cognizable claim under a quasi-contractual theory or some other form of misconduct.")(applying California law); *see generally* Black's Law Dictionary "quantum meruit" (9th ed. 2009) ("Quantum meruit is still used today as an equitable remedy to provide restitution for unjust enrichment.").

California recognizes a cause of action for quantum meruit. *See, e.g., Huskinson & Brown, LLP v. Mervyn H. Wolf*, 84 P.3d 379, 381 (Cal. 2004) ("To recover in quantum meruit, a party need not prove the existence of a contract . . . but it must

or an equitable remedy, if Bertino succeeds on the quasi-contract claims, California law would allow Bertino to recover damages from Young on a theory of unjust enrichment.

Therefore, the Court holds that there is no actual conflict between New Jersey and California law as to this issue.

## B.

With respect to Bertino's breach of contract claim based on Young's alleged failure to pay Bertino in connection with the World Resorts Project (Count I), Young argues that there can be no breach because the services Bertino provided on the World Resorts Project were not "within the scope of the Services as described in the Agreement." (Moving Brief, p. 5) Young explains that the Agreement "is limited to [Bertino's] consulting services for insurance related damage estimates," whereas the World Resorts Project was a "new construction" project where Bertino did not provide insurance related damage estimates. (Id.)

At the pleading stage however, the Court agrees with Bertino that it has sufficiently pled that the work it performed on the World Resorts Project was within the scope of the

---

show the circumstances were such that the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made.") (internal citations and quotations omitted).

Agreement.  The Agreement states that Bertino will provide
"consulting services related to insurance companies and third
party adjusters and businesses acting on behalf of insurance
companies including but not limited to, property restoration,
property defects, casualty and liability losses and litigation."
(Addendum 1 to the Agreement, p. 1)

The Second Amended Complaint pleads that Bertino's
consultants "performed estimating and cost evaluation work" for
the World Resorts Project.  (S.A.C. ¶ 37)  A reasonable
factfinder could plausibly conclude that such estimates and
evaluations were contemplated by the parties when they agreed
that Bertino would provide Young with "consulting services"
concerning such topics "*including but not limited to*, property
restoration and property defects."  (Addendum 1 to the
Agreement, p. 1) (emphasis added).

As the Court and counsel explored at some length during
oral argument on this Motion, it appears (at least at this stage
of the case) that Bertino provided the same services on the
World Resorts Project as it had on at least several other
projects for which Young did pay Bertino Overrides.  Thus, the
apparently undisputed fact that the World Resorts Project
involved consulting on new construction rather than property

casualty losses does not necessarily doom Bertino's breach of contract claim.[4]

Moreover, the alleged fact that the World Resorts Project occurred "in or around April 2011," (S.A.C. ¶ 37) is significant for two reasons. First, Bertino's work on the project occurred approximately 10 months into the parties' contractual relationship-- a relationship that by all accounts seemed to be working well, "and [was], in fact, more successful [in achieving Young's desired expansion] than Young and Bertino had originally anticipated." (S.A.C. ¶ 36)

Second, the parties were operating against the backdrop of an economic recession in which the construction industry suffered greatly. Under such circumstances, it is more plausible that Young would seek to take on available work that was not historically within its core focus, particularly with the help of Bertino's experience in new construction projects.

For these reasons, the Court concludes that the Second Amended Complaint sufficiently pleads facts supporting a conclusion either that the parties intended such work as the World Resorts Project to come within the scope of their Agreement when that Agreement was written, or that the parties'

---

[4] Indeed, that fact may actually help Bertino insofar as Bertino's area of expertise, in contrast to Young's, was new construction estimating. Thus, Bertino's contributions on the World Resorts Project may have been particularly significant and helpful to Young.

course of performance effectively amended the Agreement to include the World Resorts Project. *See generally* Cal. Code Civ. Pro. § 1856(c) ("The terms set forth in a [fully integrated] writing . . . may be explained or supplemented by course of dealing or usage of trade or by course of performance.").

Accordingly, Young's Motion to Dismiss Count I of the Second Amended Complaint will be denied.

### c.

Next, Young argues that all four quasi-contract claims-- i.e., the two unjust enrichment claims (Counts IV and V) and the two quantum meruit claims (Counts VI and VII)-- are "insufficient" as a matter of law because "a party may not pursue or recover on a quasi-contract claim if the parties have an enforceable agreement regarding a particular subject matter." (Moving Brief, p. 7)

In response, Bertino asserts that the quasi-contract claims are pled in the alternative to the contract claims, and therefore they pass muster at the pleadings stage of the case. *See generally* Fed. R. Civ. P. 8(d)(2), (3) (allowing alternative statements of claims and defenses; allowing inconsistent claims and defenses).

Under both California and New Jersey law, "a party to an enforceable contract may not seek recovery for a contract breach by resort to extra-contractual theories such as quantum meruit." *Newbery Corp. v. Fireman's Fund Ins. Co.,* 95 F.3d 1392 (9th Cir. 1996) (applying California law); *see also Moser v. Milner Hotels, Inc.*, 6 N.J. 278, 280 (1951) ("Having pleaded an express contract, the plaintiff cannot, without a showing of rescission, recover on quasi-contract. It is a well settled rule that an express contract excludes an implied one. An implied contract cannot exist when there is an existing express contract about the identical subject.").

Applying this principal to the unjust enrichment and quantum meruit claims based on Young's alleged failure to pay Bertino Overrides for the World Resorts project (Counts IV and VI), dismissal is not warranted. As addressed *supra*, Young itself argues that there is no contract covering Bertino's work on the World Resorts Project. The Court holds that Bertino has pleaded facts which plausibly support a conclusion that the World Resorts work was covered by the parties' Agreement, or that the parties' course of performance amended that Agreement. However, as Young aptly demonstrates, the facts pled do raise some question as to whether the work was within the scope of the Agreement.

Thus, this case is not a case where the parties unquestionably had a binding and enforceable agreement concerning Bertino's World Resorts work.  The facts, as pled, leave room for a reasonable factfinder to plausibly conclude that Bertino's World Resorts work was not covered by the Agreement, yet Bertino rendered services "under some understanding or expectation of both parties that compensation therefore was to be made." *Huskinson & Brown,* 84 P.3d at 381; *see also Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 440-41 (1992) (holding that the plaintiff could not recover for breach of contract because the parties never agreed on the specific amount of plaintiff's fee, but allowing plaintiff to recover in quasi-contract where the evidence clearly showed that both parties agreed that plaintiff would receive some compensation).

Thus, Young's Motion to Dismiss as to Counts IV and VI will be denied.

Likewise, dismissal is not warranted as to the quasi-contract claims based on Young's failure to pay Bertino Overrides for a term of five years (Counts V and VII).  The facts pled raise legitimate and sufficient questions, to be explored during discovery, concerning the parties' intent as to the term of their business dealings.

The Second Amended Complaint alleges that both Young and Bertino agreed that the Agreement's term would be five years;

and, importantly, even after the parties' Agreement was reduced
to writing, Young's CFO, Mike Kurtz, reaffirmed that the term
would be five years, notwithstanding the Agreement's provision
that either party could terminate the Agreement, at any time,
with or without cause upon 10 days written notice. (S.A.C. ¶
25) The Court will allow Bertino to explore this issue in
discovery.

Perhaps the facts of record will show that the parties did
not agree to a five year term, but those facts will nonetheless
support the reasonable conclusion that both parties understood
that Bertino would be paid Overrides beyond the date on which
Young terminated the Agreement. *See Huskinson & Brown,* 84 P.3d
at 381 ("To recover in quantum meruit, a party need not prove
the existence of a contract . . . but it must show the
circumstances were such that the services were rendered under
some understanding or expectation of both parties that
compensation therefor was to be made.").

The Motion to Dismiss will be denied as to Counts V and
VII.

**D.**

As to the claims based on Bertino's allegation that Young
agreed that the term of the Agreement would be five years
(Counts II and III alleging breach of the duty of good faith and

fair dealing, and Count VIII for declaratory judgment) Young argues that the claims barred by California's Statute of Frauds, Cal. Civ. Code § 1624(a)(1). Young asserts that such claims are based solely on allegations of an oral agreement. This argument misses the mark.

As Bertino explains, all three Counts are based on the written Agreement. The claims are based on the theory that the Agreement was intentionally drafted to automatically renew, and that the parties intended to allow the Agreement to automatically renew for at least five years. In other words, Bertino asserts that Young breached its duty of good faith and fair dealing when it, prior to the expiration of five years, exercised its termination right under the written Agreement. Such claims do not implicate the Statute of Frauds.

Young also relies on the principle that the implied covenant of good faith and fair dealing cannot override an express term in the contract. *See, e.g., Spinks v. Equity Residential Briarwood Apartments,* 171 Cal. App. 4th 1004, 1033 (Cal. App. 6th Dist. 2009) ("The implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract."); *Halvorsen v. Aramark Unif. Servs.*, 65 Cal. App. 4th 1383, 1390 (Cal. App. 3d Dist. 1998) ("We are aware of no reported case in which a court

has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement.  On the contrary, as a general matter, implied terms should never be read to vary express terms.") (internal citation and quotation omitted).  However, Bertino's claims are not in direct contravention of an express term of the contract.

The Agreement provides only that the "Agreement will renew yearly on the anniversary date, unless either party provides 10 days or more advance written notice of intent not to renew." (Agreement, ¶ 8)  The Agreement does not expressly provide that Young will terminate the Agreement sometime prior to the fifth anniversary date-- indeed, it does not even explicitly provide that either party may terminate at any time[5]; nor does it expressly provide that either party will *not* terminate the Agreement until the fifth anniversary date.  The Agreement is completely silent as to the timing of termination, and therefore Bertino's good faith and fair dealing claims do not override an express term of the contract.

---

[5]  For this reason, this case is distinguishable from *Steiner v. Thexton*, 226 P.3d 359 (Cal. 2010).  In *Steiner*, the California Supreme Court rejected Thexton's argument that Steiner's right of termination under the parties' real estate sales contract should be limited by the implied duty of good faith and fair dealing.  *Id.* at 419-20.  As the Court observed in the second sentence of its opinion, the contract contained "language granting Steiner 'absolute and sole discretion' to terminate" the contract of sale anytime between the execution of the contract and the close of escrow. *Id.* at 414, 415 n.2.

Lastly, Young argues that the Agreement's integration clause precludes, as a matter of law, any conclusion that the term of the Agreement was five years. The Court cannot adopt Young's position at this early stage of the case.

California's parol evidence rule, which is codified in California Code of Civil Procedure § 1856, provides in relevant part, "[t]erms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any *prior* agreement or of a *contemporaneous* oral agreement." (emphasis added). Thus the rule operates to bar evidence of oral agreements reached before, or simultaneously with, the "final [written] expression" of the parties' agreement. It does not, however, exclude *subsequent* agreements. *See generally Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.,* 55 Cal. 4th 1169, 1174 (Cal. 2013) ("[California's parol evidence rule] is founded on the principle that when the parties put all the terms of their agreement in writing, the writing itself becomes the agreement. The written terms supersede statements made *during the negotiations*.") (emphasis added).

In this case, Bertino alleges that after the Agreement was reduced to writing, Michael Bertino and Mike Kurz agreed, again, that the term of the contract would be five years. Given the

factual subtleties of this case, and the allegation that Bertino and Young both always intended-- before *and after* the agreement was reduced to writing-- that the term would be five years, the Court will allow Bertino to explore the issue in discovery.

Young's Motion to Dismiss Counts II, III and VIII will be denied.

## IV.

For the foregoing reasons, Defendant's Motion to Dismiss will be denied. An appropriate Order accompanies this Opinion.


August 1, 2013                              __s/ Joseph E. Irenas_____
                                           Joseph E. Irenas, S.U.S.D.J.